# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

                  **Case No. 1:21-cr-127**

     **v.**              **JUDGE DOUGLAS R. COLE**

**STEFFEN ROBERSON (1),**
**ALTON BEACHER (4),**
**GREGORY DONALDSON, JR. (6),**
**JEROME NEWTON, JR. (11),**

     **Defendants.**

## OPINION AND ORDER

This cause comes before the Court on Defendants Steffen Roberson; Gregory Donaldson, Jr.; Jerome Newton; and Alton Beacher's (collectively "Defendants") Motions for Bond ("Motions," Docs. 77, 81, 88, 98). For the reasons stated more fully below, the Court **DENIES** the Defendants' Motions (Docs. 77, 81, 88, 98).

## BACKGROUND

The Indictment in this case charges each of the Defendants with Narcotics Conspiracy. (Doc. 34). The Indictment additionally charges Beacher and Newton with Distribution of a Controlled Substance, and Newton with Possession with the Intent to Distribute a Controlled Substance. (*Id.*).

Between November 18, 2021, and November 22, 2021, each of the Defendants appeared before the Magistrate Judge for a detention hearing pursuant to 18 U.S.C. § 3142(f). During those hearings, the Magistrate Judge found Defendants satisfied the requirements for pretrial detention under § 3142(e), which states that the court

must detain a defendant if it determines that "no condition or combination of conditions [would] reasonably assure the appearance of the [the defendant] as required and the safety of any other person in the community." Accordingly, the Magistrate Judge ordered Defendants detained pending trial.

Subsequently, between January 26, 2022, and April 28, 2022, each of the Defendants filed Motions for Bond, effectively appealing the Magistrate Judge's detention orders. (Docs. 77, 81, 88, 98). In these Motions, Defendants argue that the Magistrate Judge erred in ordering them detained under § 3142(e), and thus the Court should release them pending trial. (*See id.*). Additionally, Roberson and Donaldson argue that they have preexisting medical conditions that render them especially vulnerable to severe infection by COVID-19, and thus the Court should release them—at least temporarily—on this basis. (Roberson Mot., Doc. 77, #1405–07; Donaldson Mot., Doc.81, #1422). The government filed responses in opposition the Defendants' Motions between February 16, 2022, and May 19, 2022. (Docs. 80, 89, 93, 104).

On June 15, 2022, this matter was transferred to the undersigned. (Order of Reassignment, Doc. 106). On June 30, 2022, the Court held a status conference. (June 30, 2022 Min. Entry). At that status conference, the Defendants requested in-person hearings on their Motions for Bond. The Court begins its analysis there.

## LAW AND ANALYSIS

### A.  The Court Rejects Defendants' Requests For In-Person Hearings.

First, the Court addresses Defendants' requests for in-person hearings on their Motions for Bond.

As previously explained, Defendants are currently detained pursuant to the Magistrate Judge's detention orders, which the Magistrate Judge issued after holding an in-person hearing with each of the Defendants under 18 U.S.C. § 3142(f).[1] Under 18 U.S.C. § 3145, Defendants are permitted to "file, with [the District Court], a motion for revocation or amendment of the [detention] order." However, "[w]hile the district court is obligated to review the magistrate's determination, the district court need not hold a hearing." *United States v. Williams,* No. 2:20-cr-142, 2020 WL 6866404, at *2 (S.D. Ohio Nov. 23, 2020) (collecting cases); *see also United States v. Brown,* No. 3:19-cr-131, 2020 WL 1914818, at *6 (W.D. Ky. Apr. 20, 2020) ("The Bail Reform Act is silent as to whether the defendant is entitled to a hearing on an appeal

---

[1] In his Motion, Newton argues that the Magistrate Judge should not have held a detention hearing at all. Rather, he argues that, under § 3142(f), the Court may only hold a detention hearing and detain a defendant pending trial if there is a serious risk that the defendant will flee or if there is a serious risk that the defendant will attempt to obstruct justice. (Doc. 88, #1465). Newton is incorrect. Under § 3142(f), a judicial officer may hold a hearing to determine whether to detain a defendant pending trial if either (1) the case involves certain enumerated offenses under § 3142(f)(1), or (2) there is a serious risk the person will flee or attempt to obstruct justice under § 3142(f)(2). Here, this case involves "an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act"—which is an enumerated offense under § 3142(f)(1). Thus, the Magistrate Judge appropriately held a detention hearing to determine Newton's pretrial detention status.

3

of a [Magistrate Judge's] detention order. Nevertheless, there is ample authority that a court may decide such a motion based on the filings … without a hearing.").

In this case, the Court concludes that Defendants' proposed hearings are unnecessary. Defendants have already had the opportunity to explain their arguments during their in-person hearings, and the Court has reviewed the recordings of those hearings. Defendants also had the chance to develop their arguments in the present Motions. Further, if Defendants wished to respond to arguments raised in the government's Oppositions, they could have filed replies. None chose to do so. More importantly, to the extent Defendants wished to use the proposed hearings to further develop the factual record, the Court concludes that there are no outstanding factual disputes whose resolution is necessary to adjudicate the instant Motions. For those reasons, the Court rejects Defendants' requests for in-person hearings on their Motions for Bond.

**B.    The Court Denies Defendants' Motions for Bond.**

Defendants raise two separate arguments in favor of their Motions for Bond. First, Defendants argue that the Magistrate Judge erred in ordering them detained under § 3142(e) as flight risks or dangers to their communities. Second, Roberson and Donaldson argue that they have certain pre-existing medical conditions that render them especially at risk of contracting severe COVID-19. The Court addresses each of these arguments below.

4

**1.  No Conditions Of Release Could Reasonably Assure Defendants' Appearance And The Safety Of Their Communities.**

When a magistrate judge orders a defendant detained pending trial under § 3142(e) as a flight risk or danger to the community and the defendant appeals to the district court, the "district court reviews [the] magistrate judge's decision *de novo*." *United States v. Rainey,* No. 20-cr-10005-1, 2020 U.S. Dist. LEXIS 89617, at *4 (W.D. Tenn. May 21, 2020); *United States v. Dailey,* No. 17-cr-20740, 2017 WL 5664185, at *2 (E.D. Mich Nov. 27, 2017); *United States v. Watkins,* No. 13-02, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (observing that, although the Sixth Circuit has not "spoken directly" on the appropriate standard of review when a defendant appeals a magistrate judge's detention order, "most district courts in the Sixth Circuit have applied the *de novo* standard of review").

Ordinarily, "[t]he default position of the law … is that a defendant should be released pending trial." *United States v. Stone,* 608 F.3d 939, 945 (6th Cir. 2010). However, "[t]hat default is modified … for certain, particularly dangerous defendants. Specifically, when a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention …." *Id.* Here, because Defendants have been charged in the Indictment with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," this presumption in favor of detention applies. 18 U.S.C. § 3142(e)(3)(A). Consequently, Defendants "must produce evidence that [they are] neither a danger to the community nor a risk of flight." *United States v. Brooks,* No. 21-1646, 2021 U.S.

5

App. LEXIS 33089, at *4 (6th Cir. Nov. 5, 2021). Although this "burden of production is not heavy, [each Defendant] must introduce at least some evidence." *Id.* (quoting *Stone,* 608 F.3d at 945). For example, in *Brooks,* the Sixth Circuit found that the defendant had successfully rebutted the presumption, because he "presented some evidence that he was not a danger to the community: he was a lifelong resident of the district; his years-long girlfriend lived with him in the district; and his criminal history involved only misdemeanor convictions." *Id.* at *3–4.

In this case, the Magistrate Judge found all Defendants except Beacher had successfully rebutted the presumption in favor of detention. In its Oppositions, the government does not dispute that Roberson, Donaldson, and Newton have successfully rebutted the presumption. (*See* Docs. 80, 89, 93). Moreover, and in any event, after independently reviewing these three Defendants' Motions, the Court agrees with the Magistrate Judge's conclusions.

That still leaves, though, Beacher—the lone Defendant here who the Magistrate Judge found failed to rebut the presumption. In his Motion, Beacher supplements the record, emphasizing that he is neither a flight-risk nor a danger to the community because: (1) he is a lifelong resident of the Cincinnati-area; (2) he is married and his wife works full-time for the post office; and (3) he has a four-year-old daughter, with whom he is close and who he helps care for while his wife is at work. (Beacher Mot., Doc. 98, #1523). Although Beacher concedes that he has a criminal record, he notes that most of his convictions date back more than twelve years. (*Id.*). While Beacher's criminal history gives the Court pause, in light of his strong

6

connections to the community, the Court concludes that Beacher has met the relatively light burden of production necessary to overcome the presumption of detention.

Because all four Defendants have overcome the presumption in favor of detention, the Court proceeds to the next step of the inquiry. "If a defendant satisfies his burden of production, the presumption becomes one of several other factors that must be weighed by the district court under [18 U.S.C.] § 3142(g)." *Brooks,* 2021 U.S. App. LEXIS 33089, at *4. That is, "the presumption 'represents Congressional findings that certain offenders … are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions.'" *Id.* (quoting *Stone,* 608 F.3d at 946). Thus, even though Defendants have rebutted the presumption in favor of the detention, the presumption essentially becomes a factor weighing in favor of detention. *Id.*

Under 18 U.S.C. § 3142(g), the district court must also consider four other factors: "(1) 'the nature and circumstances of the offense[s],' including whether the offense[s are] controlled substances offense[s]; (2) 'the weight of the evidence against' the defendant[s]; (3) 'the history and characteristics of the defendant[s]'; and (4) 'the nature and seriousness of the danger to any person of the community that would be posed by' the defendant[s'] release." *Id.* (quoting 18 U.S.C. § 3142(g)). The Court turns to each of those remaining factors below as to each of the four Defendants this Order addresses.

### a.    The Nature And Circumstances Of The Offenses.

The first factor the Court must consider is "the nature and circumstances of the offense[s] charged, including whether the offense[s] … involve[d] … a controlled substance." 18 U.S.C. § 3142(g)(1). For example, in *Brooks,* the Sixth Circuit found that this factor weighed in favor of detention because the defendant's "only charged offense involved trafficking in large quantities of methamphetamine. His offense also involve[d] a substantial sentence of up to ten years to life imprisonment." *Brooks,* 2021 U.S. App. LEXIS 33089, at *4–5.

In this case, the government alleges that each of the Defendants was involved in a wide-ranging and long duration conspiracy to distribute controlled substances, including "one kilogram or more of mixtures and substances containing a detectable amount of heroin … and 400 grams or more of mixtures or substances containing a detectable amount of fentanyl." (Indictment, Doc. 34, #899–900). Each of the Defendants faces a mandatory minimum term of ten years in prison, with the possibility of a sentence of up to life. (*Id.*). These are serious crimes, made all the more serious when one considers the potential consequences of Defendants' alleged drug distribution activities. Generally speaking, two milligrams of fentanyl is considered a potentially lethal dose. *See Facts about Fentanyl,* United States Drug Enforcement Administration (Apr. 29, 2021).[2] Here, Defendants are accused of conspiring to traffic four hundred grams of a substance containing a detectable amount of fentanyl. Even if only a small percentage of that substance proves to be fentanyl, it would

---

[2] Available at https://www.dea.gov/resources/facts-about-fentanyl.

nonetheless be sufficient to kill hundreds—if not thousands—of people. In short, given the quantity of drugs allegedly involved, the dangers those drugs represented, the duration of the alleged conspiracy, and the severity of the potential sentences Defendants face, the Court concludes this factor favors continued detention as to each Defendant.

### b. The Weight Of The Evidence Against Defendants.

Next, the Court turns to the weight of the evidence against Defendants. Importantly, the Sixth Circuit has found that "[t]his factor goes to the weight of the evidence of *dangerousness*, not the weight of the evidence of the defendant's guilt." *Stone,* 608 F.3d at 948 (emphasis added); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (noting that § 3142(g) "neither requires nor permits a pretrial determination of guilt").

For example, in *United States v. Whigham,* a defendant accused of participating in a drug trafficking conspiracy argued that this factor favored pretrial release primarily because "the evidence he was involved a drug conspiracy [was] tenuous." No. 22-5444, 2022 U.S. App. LEXIS 19148, at *4 (6th Cir. July 12, 2022). The Sixth Circuit rejected the defendant's argument, however, finding that it went "to the weight of the evidence of his guilt, not his dangerousness." *Id.* Properly applied, the Sixth Circuit found the weight of the evidence factor favored continued detention, explaining that even though the defendant "ha[d] no prior convictions for drug trafficking and [a prior] conviction for possession of cocaine did not involve a firearm, the current offense involve[d] trafficking significant amounts of

methamphetamine." *Id.* "Evaluated in th[at] context," the Court thus concluded, "the evidence support[ed] [the defendant's] detention." *Id.*

Similarly, in applying this factor in a recent case, the Northern District of Ohio noted that the defendant's "distant past involved some violent crimes, [but] those prior violent offenses [were] over twenty years old, and [the defendant] ha[d] not had criminal charges at all, excluding the charges in this case, for fifteen years." *United States v. Staudohar,* No. 1:21-cr-533, 2021 WL 4340069, at *4 (N.D. Ohio Sept. 23, 2021). On the other hand, the court also noted that the offenses charged in that case "involve[d] threats of violence." *Id.* Moreover, the court also expressed concern that, after listening to an audio recording of one of those threats, the defendant "did not sound mentally well." *Id.* Nonetheless, the record showed that the defendant "did not take steps toward acting on the threats he made." *Id.* Thus, on final analysis, the court concluded that this factor "lean[ed] slightly in favor of release." *Id.*

The Court applies this factor to each of the Defendants below.

### i. *Roberson*

Turning first to Roberson, the Court concludes that there is substantial evidence of Roberson's dangerousness to his community, which points in favor of pretrial detention. To start, as in *Whigham*, "the current offense involve[d] trafficking significant amounts of" drugs—drugs that, as observed above, posed a substantial danger to a large number of people. (Indictment, Doc. 34, #899–900). And, the evidence of his involvement in those activities is fairly strong—it includes testimony from a confidential source who claims to have personally sold over twenty kilograms

of heroin to Roberson for distribution. (Roberson Compl., 1:21-MJ-880, Doc. 4-1, #929–31). The combination of those two thus presents strong evidence of dangerousness. Beyond that, the Court also notes that Roberson has multiple previous convictions related to drug possession and trafficking. (Opp'n to Roberson Mot., Doc. 80, #1416). Admittedly, these are not crimes of violence. Nonetheless, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence," *Stone,* 608 F.3d at 947 n.6, and the quantities allegedly involved here are hardly "run-of-the-mill." Moreover, the Court also observes that Roberson has a history of failing to comply with court-ordered supervision, which suggests that any pretrial conditions of release the Court might elect to impose to ensure community safety may well be fruitless, again reflecting Roberson's potential dangerousness. (Opp'n to Roberson Mot., Doc. 80, #1416).

In his Motion, Roberson offers two counterarguments. First, Roberson argues that "there is no direct evidence of [his] involvement in the [instant] Narcotics Conspiracy. Drugs were not recovered from [Roberson's] apartment, his girlfriend's condominium, his vehicles, the studio he is alleged to have frequented, or at any other addresses affiliated with him in the complaint." (Roberson Mot., Doc. 77, #1404). Rather, Roberson argues, "[a]ll references to [him] are speculation of his involvement made by confidential informants working in exchange for consideration." (*Id.*).

Roberson's argument is unpersuasive for two reasons. First, as the government notes in its Opposition, there is a significant amount of evidence connecting him to

11

the alleged drug trafficking conspiracy in this case. Specifically, as the government explains, on the day Roberson was arrested, "law enforcement executed search warrants of various residences which are connected to him and his drug trafficking activity." (Opp'n to Roberson Mot., Doc. 80, #1415). In executing one of these warrants at a location previously identified as a residence Roberson used for drug trafficking and gambling, the agents found Roberson, along with four other individuals. (*Id.*). Also at this residence, the agents found a bag of "suspected heroin/fentanyl in the dryer vent" and approximately $40,000. (*Id.*). At another residence associated with Roberson, the agents also found two drug presses, digital scales, and a firearm. (*Id.* at #1416).

The second—and more important—reason the Court rejects Roberson's argument is because he misapplies the "weight of the evidence" factor. As already discussed, "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone,* 608 F.3d at 948. Thus, even if Roberson were correct that there is no direct evidence connecting him to the instant charges, that alone would not suffice to show the weight of the evidence points in favor of pretrial release. Indeed, as discussed above, there is substantial evidence showing that Roberson has a history of trafficking and possessing controlled substances and failing to comply with court orders—which indicates that Roberson would pose a danger to his community if released from pretrial detention, even apart from the allegations at issue here.

*ii.* *Donaldson*

Donaldson—like Roberson—also has a significant criminal history, which provides evidence of potential dangerousness to his community if the Court were to order him released. (Opp'n to Donaldson Mot., Doc. 89, #1473). Indeed, alongside prior convictions for drug-related crimes, Donaldson has also been convicted of (among other things) carrying concealed weapons, weapons under disability, and domestic violence. (*Id.*). And his alleged involvement in the current offense likewise offers strong evidence of dangerousness. The Complaint alleges that a confidential informant contacted Donaldson to arrange for the purchase of heroin, a dangerous drug. (Donaldson Compl., 1:21-MJ-874, Doc. 4-1, #1103–04). Moreover, when officers executed a search warrant at an address associated with Donaldson, they discovered, in addition to drugs and drug paraphernalia, ammunition to multiple different caliber handguns. (*Id.* at #1104).

Donaldson offers two counterarguments in his Motion—neither of which are persuasive. First, he argues that the government has failed to produce any evidence of his involvement in the instant alleged conspiracy—thus, the weight of the evidence points in favor of pretrial release. That argument fails, though, for the same reason it failed when Roberson made it—that is, the issue is the evidence of *dangerousness,* not *guilt.* Second, Donaldson argues that even taking the government's allegations as true, he was at most a "minor player in the purported conspiracy," and thus pretrial detention is inappropriate. Even if that's right, though, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers"—thus, even if Donaldson was a relatively minor participant in this alleged

13

conspiracy, that provides little assurance that he is not a danger to his community. *Stone,* 608 F.3d at 947 n.6. But, beyond that, the allegations and evidence here do not suggest a non-dangerous, minor participant. There is evidence that a confidential informant contacted Donaldson to purchase heroin, a dangerous drug. And, when agents executed a search warrant at an address allegedly associated with Donald, they discovered, in addition to drugs and drug paraphernalia, ammunition to multiple different caliber handguns. That evidence, in combination with Donaldson's extensive criminal history, provides the Court abundant evidence that Donaldson's release would pose a danger—thus, the second § 3142(g) factor favors detention as to him.

### iii. *Newton*

Turning next to Newton, the Court notes first that—according to the government—law enforcement recovered more than four hundred grams of fentanyl from one of his residences on November 16, 2021, as well as more than seven *kilograms* of fentanyl from another of his residences that same day. (Opp'n to Newton Mot., Doc. 93, #1495). Newton also reportedly possessed multiple firearms. (*Id.*). Moreover, Newton also has two prior drugs convictions and has previously violated parole. (*Id.*). Given this criminal history, as well as the drugs and weapons discovered at his residences, the Court concludes that the dangerousness factor favors continued detention of Newton.

*iv.* *Beacher*

Finally, the Court addresses Beacher. Like his co-Defendants above, Beacher also has a lengthy criminal history that includes four prior drug convictions, as well as prior convictions for weapons offenses. (Opp'n to Beacher Mot., Doc. 104, #1544). Beacher also has a history of failing to appear for Court. (*Id.*). These both raise serious concerns as to whether Beacher can be safely released back into his community pending trial.

In his Motion, Beacher attempts to downplay his history. Specifically, Beacher argues that "most of [his criminal past] occurred prior to [his] 30th birthday, in 2010, and most of which involves illegal substances." (Beacher Mot., Doc. 98, #1523). This is because, Beacher argues, he previously "had a significant substance abuse problem which contributed to his record." (*Id.*). Although Beacher suggests that his criminal history is largely a thing of the past, however, his more recent conviction for possessing weapons under disability in 2018, for which he spent time in prison, belies that argument. (*Id.*). Measured from the standpoint of potential dangerousness, possessing weapons while under a disability is a serious offense which the Court cannot take lightly. Accordingly, the Court concludes that the weight of the evidence of Beacher's dangerousness to the community weighs in favor of his continued pretrial detention.

## c. **Defendants' Histories And Characteristics.**

Having established that the first two factors both point in favor of continued pretrial detention as to all four Defendants, the Court next addresses the third

§ 3142(g) factor: Defendants' "history and characteristics." Under the statute, this factor includes the Defendants' "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at courts proceedings." 18 U.S.C. § 3142(g)(3)(A). As part of this factor, the Court must also consider "whether, at the time of the current offense or arrest, the [Defendants were] on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." *Id.* § 3142(g)(3)(B).

### i. Roberson

Roberson's history and characteristics point in competing directions. On the one hand, he has strong ties to the Cincinnati area. He has lived here for much of his life, and at least some of his family and his girlfriend reside here. (Roberson Mot., Doc. 77, #1405). Roberson's counsel states that his mother has been particularly supportive and engaged in assisting Roberson since his arrest. (*Id.*). This local support network might reduce Roberson's risk of flight and any danger he may pose to the community.

On the other hand, however, various factors in Roberson's background raise significant cause for concern. Roberson has no verifiable employment, but rather describes himself as a "promoter and developer of artists." (*Id.*). Moreover, Roberson's residential history is somewhat unclear. Although he describes himself as a "lifelong resident" of Cincinnati, he also appears to have lived in Atlanta—raising some

16

concerns that he may pose a flight risk. (*Id*.). In its Opposition, the government also contends that Roberson has "a serious gambling habit"—a contention that finds at least some support in the fact that Roberson was discovered gambling on the morning of his arrest. (Opp'n to Roberson Mot., Doc. 80, #1416). Given Roberson's apparent lack of steady employment, there are serious concerns that this gambling habit may incentive him to engage in activities dangerous to the community while on pretrial release. Moreover, as already discussed, Roberson has a lengthy (and dangerous) criminal history.

On the final analysis, although the Court recognizes that Roberson may have a strong support network in the Cincinnati area, his lack of steady employment, gambling habits, and connections outside the city nevertheless compel the conclusion that his history and characteristics weigh in favor of pretrial detention.

### ii. *Donaldson*

Donaldson's history and characteristics are also something of a mixed bag. To Donaldson's credit, he appears to have strong roots and a healthy support network in the Cincinnati area. He was a stay-at-home father to his children during the COVID-19 pandemic, and remains an important childcare provider in his family. (Donaldson Mot., Doc. 81, #1422). A letter from Donaldson's father submitted with Donaldson's Motion also speaks highly of his efforts at rehabilitation since his prior criminal convictions. (Doc. 81-2, #1425). Similarly, a letter from a friend of Donaldson

17

describes Donaldson's efforts to train as a painter and cleaner and speaks to Donaldson's strong work ethic. (Doc. 81-1, #1424).

While Donaldson's role as a father and efforts to improve himself are laudable, they must be weighed against other more concerning elements in his history and background. Most notably, and as detailed in the previous section, he has a checkered history with the criminal justice system—including certain especially troubling arrests and convictions related to firearms and domestic violence. (Opp'n to Donaldson Mot., Doc. 89, #1473). One of these domestic violence arrests took place quite recently—in 2021—casting some doubt on the success of Donaldson's rehabilitative efforts. (*Id.*). Given the gravity of these concerns, the Court concludes that Donaldson's history and characteristics weigh in favor of continued detention.

### iii.    Newton

Newton's history and characteristics also weigh in favor of pretrial detention. As already discussed, Newton has a history of drug trafficking and has previously violated parole. He also has fifteen convictions for driving under a suspended license and numerous traffic offenses—in the context of which he allegedly failed to appear for court six times. (Opp'n to Newton Mot., Doc. 93, #1495). Moreover, Newton does not appear to have any meaningful employment history. (*Id.* at #1496).

### iv.    Beacher

Beacher's history and characteristics reflect elements pointing both in favor and against granting pretrial release. In his favor, Beacher's Motion notes that he has strong ties to the Cincinnati area and has lived here his entire life. (Beacher Mot.,

18

Doc. 98, #1523). He is married and his wife works for the Post Office full time; he is close with his four-year-old daughter, who he cares for during the day while his wife is at work. (*Id.*). That said, Beacher also has a history of drug trafficking and convictions for weapons offenses. (*Id.*). Moreover, he also has five misdemeanor drug possession convictions and five convictions for driving under a suspended license and traffic offenses. (*Id.*). In that context, he allegedly failed to appear for court four times. (*Id.*). He also does not have any meaningful employment history. (*Id.*). While recognizing that Beacher's strong family ties render his case somewhat of a close call, the Court nonetheless concludes that this factor favors continued detention.

### d.  The Nature And Seriousness Of The Danger.

The final factor the Court must analyze under § 3142(g) is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In this case, all four Defendants have been charged with conspiring to possess with intent to distribute and to distribute controlled substances. (Indictment, Doc. 34, #899–900). "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone,* 608 F.3d at 947 n.6, For example, in *Whigham,* the Sixth Circuit found that the defendant's indictment on drug trafficking alone was sufficient basis to conclude that the fourth § 3142(g) factor pointed in favor of pretrial detention. 2022 U.S. App. LEXIS 19148, at *5. Especially given some of the quantities allegedly involved here, including amounts of fentanyl that easily could prove fatal to hundreds—if not thousands, or even tens of thousands—of people (depending on the purity of the substance containing fentanyl),

the Court likewise concludes that the fourth factor weighs in favor of continued detention as to all four Defendants.

Putting it all together, the Court finds each of the above factors indicate that there are no conditions of release as to any of the four Defendants "that will reasonably assure the appearance of [Defendants] as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). Accordingly, the Court declines to grant Defendants' Motions for Bond under § 3142(g).

### 2. The Court Rejects Defendants' Requests For Release On COVID-Related Grounds.

In addition to arguing that the Magistrate Judge incorrectly weighed the § 3142(g) factors, Roberson and Donaldson also argue that bond is appropriate in this case in light of concerns related to COVID-19. Specifically, Roberson argues that he "suffers from high blood pressure, which is the most commonly shared pre-existing condition among those hospitalized with COVID-19. High blood pressure weakens the immune system[,] which makes those who suffer from it more vulnerable to viral infections." (Roberson Mot., Doc. 77, #1406). Donaldson, for his part, argues that "prior life-threatening injuries resulted in him having a weakened immune system such that COVID-19 exposure within the jail would place him at greater risk for infection and more severe symptoms." (Donaldson Mot., Doc. 81, #1422). Although Donaldson does not explain what these "life-threatening injuries" are, in its Opposition, the government suggests that "[p]resumably, Donaldson is referring to

being shot nine times in 2016, which caused permanent nerve pain." (Opp'n to Donaldson Mot., Doc. 89, #1474).

Courts in this circuit typically evaluate requests for release based on concerns related to COVID-19 under 18 U.S.C. § 3142(i). *See, e.g.*, *United States v. Nero*, 854 F. App'x 14, 18 (6th Cir. 2021); *United States v. Bothra*, 838 F. App'x 184, 184–85 (6th Cir. 2021). That subsection states, in pertinent part, that a court may "permit the temporary release of the [detained] person, in the custody of a United States marshal or another appropriate person, to the extent that the [court] determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). "The defendant has the burden of establishing circumstances warranting temporary release pursuant to § 3142(i)." *Bothra,* 838 F. App'x at 185 (collecting sources).

In determining whether COVID-19 represents a "compelling reason" justifying temporary release under § 3142(i), the Sixth Circuit has adopted a four factor test first promulgated by the District of Kansas in *United States v. Clark. United States v. Ramadan,* No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sep. 22, 2020) (citing *United States v. Clark*, 448 F. Supp. 3d 1152, 1157 (D. Kan. Mar. 25, 2020)). Under the *Clark* test, courts

> evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help

guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.* (quoting *Clark,* 448 F. Supp. 3d at 1157). In evaluating these factors, the Sixth Circuit has also emphasized that any risk posed by COVID-19 towards the defendant must be "weighed … against the defendant's risk of flight or danger to the community." *Bothra*, 838 F. App'x at 185.

Applying the *Clark* factors here, the Court concludes that Roberson and Donaldson's concerns regarding COVID-19 do not represent a sufficiently compelling reason to justify release under § 3142(i). As to the first factor—the original grounds for detention—the Court has already discussed at length its findings that Roberson and Donaldson pose a substantial danger to their communities. Accordingly, this factor weighs in favor of continued detention.

As to the second factor—the specificity of the COVID-19 concerns—the Court also finds Roberson and Donaldson's arguments unpersuasive. Indeed, Donaldson's argument is especially vague—stating only that "prior life-threatening injuries resulted in him having a weakened immune system." (Donaldson Mot., Doc. 81, #1422). Donaldson does not explain what these life-threatening injuries are, or how exactly they cause him to have a weakened immune system. The government suggests that Donaldson may be referring to injuries related to being shot nine times in 2016, which apparently caused nerve damage. Even if that is true, however, the connection between these injuries and Donaldson's risk of contracting severe COVID-19 is not at all clear to the Court. (Opp'n to Donaldson Mot, Doc. 89, #1474).

Roberson, to his credit, is slightly more specific about his concerns—arguing that his high blood pressure renders him particularly vulnerable to COVID-19. (Roberson Mot., Doc. 77, #1406). Roberson's evidence on that front, however, is thin. In support of his argument, he cites only to an article from WebMD. (*Id.* (citing *Coronavirus and High Blood Pressure: What's the Link?,* WebMD[3])). That article, though, only says that "[t]here is a *possibility* that having high blood pressure might put [one] at greater risk for severe illness and death with COVID-19." *Coronavirus and High Blood Pressure,* WebMD (emphasis added). The government, in response, points to evidence from the Centers for Disease Control ("CDC") stating that the connection between hypertension (high blood pressure) and the risk of severe illness from COVID-19 is "inconclusive." (Opp'n to Roberson Mot., Doc. 80, #1417) (citing *Evidence for Conditions that Increase Risk of Severe Illness,* CDC (Jun. 15, 2022)[4])). Of course, this Court cannot say as a matter of certainty that Roberson is not at higher risk by virtue of his hypertension. But as the party seeking release under § 3142(i), it is Roberson's burden to show with some specificity why COVID-19 presents a special concern for him. He has not met this burden, and accordingly this factor weighs in favor of continued detention.

Next, the Court turns to the third factor: the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant. Here, both Roberson and Donaldson propose that they could be released

---

[3] Available at https://www.webmd.com/lung/coronavirus-high-blood-pressure.

[4] Available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html.

with electronic monitoring. That would, presumably, mitigate their risk of contracting COVID-19, because it would significantly reduce the number of individuals they come into contact with on a daily basis. Thus, this factor favors release.

Finally, the Court addresses the fourth factor: the likelihood that Roberson and Donaldson's release would increase COVID-19 risks to others. In evaluating this factor, the Court is cognizant that the *Clark* test was promulgated in March 2020—during the earliest stages of the pandemic. At that time, there were no vaccines available to prevent the spread of the virus and medical practitioners were still learning how to treat those who contracted the disease. Thus, it was a reasonable concern that releasing a defendant could pose risks to those charged with caring for him—particularly his family, friends, and pretrial officers—if the defendant failed to take precautions and follow orders designed to prevent the spread of the virus. *See Clark,* 448 F. Supp. 3d at 1161.

Thankfully, medical science has come a long way since then. Many Americans are now vaccinated against COVID-19, and available treatments for those who become infected, including monoclonal antibodies, have become much more effective. Moreover, many people have developed some level of acquired immunity by virtue of already contracting the virus. In light of these developments, the risk that Roberson and Donaldson may spread the virus to others strikes the Court as—at most—a minimal consideration.[5]

---

[5] To the extent the Court's analysis here runs the risk of reading the fourth *Clark* factor out of existence, the Court would note that these changes in the landscape since the *Clark* test

Putting it all together, the Court finds that the first and second factors—the reasons for Roberson and Donaldson's pretrial detention and the specificity of their COVID-19 concerns—both weigh heavily against release. The third and fourth factors, however, weigh in favor of release, albeit only slightly. Accordingly, the Court concludes that temporary pretrial release in light of the risk posed by COVID-19 is not appropriate at this time.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Roberson, Donaldson, Newton, and Beacher's Motions for Bond (Doc. 77, 81, 88, 98)

**SO ORDERED.**

July 28, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

was handed down presumably cut both ways. That is, on the one hand, a defendant might argue that he does not pose a high risk of spreading COVID-19 to others because of widespread vaccination, acquired immunity, and better medical treatment—all of which would weigh in favor of release. On the other hand, precisely because of these medical advancements, the risk that a defendant would contract severe COVID-19 while detained is also significantly lower—which would weigh in favor of continued detention under the second *Clark* factor (the specificity of the defendant's COVID-19 concerns).

25